---

### 6777. WRIGHT *v.* CENTRAL OF GEORGIA RAILWAY CO.

1. "As a general rule, a stipulation in a free pass given by a carrier, to the effect that the person who accepts it assumes all risks of injury in transportation, is enforceable; and as to a passenger who has accepted transportation under such a pass a carrier is liable only for injuries resulting from wantonness or wilful negligence." *Charleston &c. Ry. Co.* v. *Thompson,* 13 *Ga. App.* 528 (80 S. E. 1097).

2. Under orders of the railroad commission of this State, in which it is provided that passes for free transportation on railroads shall be issued and honored only "upon the terms provided for interstate transportation by the act of Congress, approved June 29, 1906, known as the Hepburn act," and in the "act to regulate commerce, as amended June 18, 1910," the case of an employee of a railroad company who is injured when traveling between points in this State, on a free pass issued by the railroad company and containing a stipulation that he releases the company from liability in case of injury, does not constitute an exception to the rule stated above. So far as the decision of this court in *C. & W. Ry. Co.* v. *Thompson*, supra, conflicts with what is here held, it was overruled by the decision of the Supreme Court of the United States in the same case (234 U. S. 578).

3. The assignment of error as to the exclusion of testimony is without substantial merit; and, under the pleadings and the evidence, the court did not err in awarding a nonsuit.

DECIDED JUNE 27, 1916.

Action for damages; from city court of Savannah—Judge Davis Freeman. June 16, 1915.

*D. H. Clark*, for plaintiff.

*Lawton & Cunningham, H. W. Johnson*, for defendant.

WADE, C. J. B. M. Wright sued the Central of Georgia Railway Company for damages on account of personal injuries received by him by reason of the derailment of its train on which he was a passenger, traveling from Savannah, Georgia, to Rocky Ford, Georgia, on September 4, 1914. The defendant amended its original answer by pleading that the plaintiff, at the time of the injury, was traveling on an annual pass, issued to him as a railroad employee, pursuant to the act of Congress, approved June 29, 1906, known as the Hepburn act, and the amendments thereto, and in pursuance of the rules and orders of the railroad commission of the State of Georgia, and that the pass was good for both interstate and intrastate free transportation. The pass stated that it was issued to B. M. Wright, "account brass liner, Savannah shops," and on the back of the pass were the following conditions: "I accept this free pass on these conditions and representations: I am not prohibited by law from receiving free transportation. The pass will be lawfully used, and not otherwise. If presented by another, it may be taken up and cancelled and full fare collected. I release and surrender all liability or claim which may accrue to me or to others for loss, injury, or damage. [Signed] B. M. Wright." At the conclusion of the evidence for the plain-

tiff, the court, on motion of counsel for the defendant, granted a nonsuit; to which the plaintiff excepts.

The evidence clearly established the fact that the plaintiff, at the time of the injury, was traveling on an annual pass, which contained a condition signed by him, releasing and surrendering all "liability or claim" for "loss, injury, or damage." The testimony of the plaintiff himself settles any question as to whether he had knowledge of the conditions upon which the pass was issued to him, and as to whether he signed it of his own free will and accord, or whether he was forced to do so by the defendant. On these points he testified as follows: "The pass that you exhibit here looks like the same one I had. This looks like a duplicate of the pass. This is a pass that has not been issued at all. Of course, it is just about the same as the one I had. I signed the pass on the back, of course, before I used it. We were compelled to do that. It sets forth the conditions set out on the back, that we release the road from all responsibility. That is what my pass said. All passes are the same. I knew that was written on the back, and I signed it. . . I was told that all the men would receive a pass, at the time I got this pass. I suppose it was the foreman who told me that. I could not be positive now, but I heard it talked all about, that all the men would get it, because the railroad did not make any distinction among the men. . . He did not read anything on the pass to me; he did not ask me to read anything on it. . . The railroad did not force me to take and use this pass, they did not force me. I wanted to use the pass because I could travel anywhere on the Central Railroad with it, like anybody else who had them. Mr. Hill did not force anything on me. I had been using trip passes for years. I had to ask for one whenever I wanted to make a trip. Here was an annual pass offered to me when I could go and come as I pleased without asking. . . I was not compelled to take it. It was offered to me by the company, and I accepted it. I had asked for trip passes, and when they issued that annual pass they made me a present of it without my asking for it, and it was a convenience to me, and I continued to use it as long as it was good, during 1914. After the accident I used it frequently. I was a passenger on the train, my pass was recognized as a ticket, and I had that with me at the time,— obliged to have it."

It being shown that the plaintiff was traveling on a free pass, which contained a condition relieving the defendant from all liability, and that he knew that the pass contained this condition or stipulation when he signed and accepted it of his own volition, the next question which naturally presents itself is whether the condition printed on the back of the pass, exempting the defendant from all liability in case of injury, is valid and enforceable, or void as being against public policy. The general rule seems to be, that, as an incident to the right to issue a pass, as a gratuity, to an employee or a member of his family, the carrier has the right to impose upon the issuance, acceptance, and use of the pass the condition that the carrier shall not be liable in damages for personal injury to the recipient in consequence of its negligence. See Northern R. Co. v. Adams, 192 U. S. 441 (24 Sup. Ct. 408, 48 L. ed. 513); Boering v. Chesapeake Beach R. Co., 193 U. S. 442 (24 Sup. Ct. 515, 48 L. ed. 742); Hutto v. Southern R. Co., 75 S. C. 295 (55 S. E. 445). In rendering the decision in the case of *Charleston &c. Ry. Co.* v. *Thompson,* 13 *Ga. App.* 528 (80 S. E. 1097), Judge Russell, speaking for this court, said: "As a general rule, a stipulation in a free pass given by a carrier, to the effect that the person who accepts it assumes all risk of injury in transportation, is enforceable; and as to a passenger who has accepted transportation under such a pass a carrier is liable only for injuries resulting from wantonness or wilful negligence; but an exception to this rule is presented in the provision of the 'Hepburn act' (Act of June 29, 1906, c. 3591, 34 Stat. 584 [U. S. Comp. St. Supp. 1911, p. 1288]) which permits a railroad company to issue free transportation to its employees and members of their families. As between such employees and the railroad company which employs them, the privilege and benefit of being afforded transportation without cost may be regarded as a part of the consideration paid for the services of the employee, and may be treated as an element of value within the contemplation of both parties at the time of entering into the contract of employment." However, that case was carried to the United States Supreme Court, where the judgment was reversed, the court holding that "Under the free-pass provision of the Hepburn act of June 29, 1906, a free pass issued by a railroad company between interstate points to a member of the family of an employee is gratuitous and

not in consideration of services of the employee. As a pass issued to a member of the family of an employee of a railroad company is free under the provision of the Hepburn act permitting it to be issued, the stipulations contained in it and on which it is accepted, including one exempting the company from liability in case of injury, are valid." Charleston &c. Ry. Co. *v.* Thompson, 234 U. S. 576 (34 Sup. Ct. 964, 58 L. ed. 1476).

In the present case the pass was undoubtedly gratuitous; and, from what is said above, there can be no question as to the validity of its stipulations. The railroad company was under no obligation to issue the pass, and it can not be said that the railroad company and the employee contemplated, at the time the contract of employment was entered into, that the privilege and benefit of free transportation was to be regarded as a part of the consideration paid for the services of the employee, since, as said by Justice Holmes in the decision in the Thompson case (234 U. S. 578), even if "the improbable speculation that the possibility of getting an occasional free pass entered into the motives of the employee in working for the road, the law did not contemplate his work as a conventional inducement for the pass, but, on the contrary, contemplated the pass as being what it called itself—free."

It is contended that the court erred in allowing the defendant to amend its original answer by alleging that, at the time of the injury, the plaintiff was traveling on a free pass, pursuant to the interstate-commerce law, known as the Hepburn act; the error complained of being that the amendment set up a defense under a law which applies only to interstate, and not to intrastate travel. There is no merit in this contention, since the pass upon which the plaintiff was traveling was subject to General Order No. 3 of the railroad commission of Georgia, October 29, 1907, which provides that such passes shall only be issued or honored "upon the terms provided for in interstate transportation by the act of Congress, approved June 29, 1906, known as the Hepburn act." General Order No. 3 was amended by General Order No. 20, October 7, 1910, which provides that "the terms upon which free transportation can be used in Georgia be and the same are hereby extended in the same manner and to the same extent as provided for in the act to regulate commerce, as amended June 18, 1910."

The decision of the Supreme Court of the United States in the

Thompson case, supra, controls the case under consideration; the conditions printed on the back of the free pass on which the plaintiff was traveling at the time of the injury were enforceable, and the defendant can not be held liable for injuries not due to wilful or wanton negligence. In the allegations of the petition and the evidence for the plaintiff there was nothing from which it could be even inferred that the railroad company was guilty of wilful or wanton negligence.

The court therefore did not err in awarding a nonsuit.

*Judgment affirmed.*